UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TIMOTHY LYNCH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-316-DBH |
| | ) | |
| WESTERN EXPRESS, INC., | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS

The defendant, Western Express, Inc., moves to dismiss this employment action for lack of personal jurisdiction. For the reasons that follow, I recommend that the court deny the motion.

### I. Applicable Legal Standard

The motion invokes Fed. R. Civ. P. 12(b)(2). A motion brought under this subsection of Rule 12 alleges lack of personal jurisdiction. Such a motion raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 367 (D. Me. 1992) (citation and internal quotation marks omitted).

The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices. *Archibald v. Archibald*, 826 F. Supp. 26, 28 (D. Me. 1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v.*

1

*Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992).  However, for purposes of considering a Rule 12(b)(2) motion, the court will accept properly supported proffers of evidence as true.  *Id*.

## II.  Factual Background

The complaint alleges the following relevant facts.

The plaintiff resides in Lewiston, Maine.  Plaintiff's Complaint ("Complaint') (ECF No. 1) ¶ 2.  The defendant is a Tennessee Corporation with its principal place of business in Tennessee.  *Id*. 4.  The plaintiff applied for and was hired for a position with the defendant from his home.  *Id*. ¶ 11.  The defendant informed the plaintiff that his truck driving position would be based in his home, that he would park his truck at his home between runs, that he would be making frequent deliveries from Poland Springs' Maine facility, that he would spend more time driving in Maine than in any other state, and that the defendant would be responsible for paying Maine state taxes in connection with the plaintiff's employment. *Id*.

The plaintiff suffered from attention deficit hyperactivity disorder ("ADHD") at all relevant times.  *Id*.  ¶ 17.  On or about May 13, 2010, the plaintiff completed Class A commercial driver training.  *Id. ¶* 22.   On or about September 30, 2010, the plaintiff underwent a Federal Motor Carrier Safety Administration ("FMCSA") medical examination.  *Id*. ¶ 25.   The examiner concluded that the plaintiff met the commercial motor vehicle driver standards set out in 49 C.F.R. § 391.41 and could safely operate a commercial motor vehicle.  *Id*.  The September 30, 2010, medical certification was valid for 24 months.  *Id*. § 26.

On or about September 30, 2010, the plaintiff accepted the defendant's offer of employment as an over the road driver.  *Id*. ¶¶ 27-29.  The defendant then requested that the plaintiff travel to its headquarters in Nashville, Tennessee, for an orientation beginning on

October 10, 2010, and the plaintiff flew to Nashville. *Id*. ¶ 32. He brought copies of his Class A training certificate, a form completed by his treating nurse practitioner, Beth Dube, the results of his FMCSA medical exam, and a letter from his treating nurse practitioner. *Id*. ¶¶ 23, 33. The defendant, nonetheless, required the plaintiff to complete another physical examination for FMCSA certification with its chosen medical provider. *Id*. ¶ 36. The defendant did not require all newly hired drivers to undergo such a physical if the employees already had valid FMCSA medical certificates. *Id*. ¶ 37.

The plaintiff met with Dr. Greg Elam, the defendant's examiner, in Nashville on or about October 10, 2010, and disclosed to Dr. Elam that he had ADHD. *Id*. ¶ 38. Dr. Elam did not obtain any detailed information from the plaintiff about his ADHD, his medication regimen, his medical history, his driving experience, the efficacy of medication treatment, or his prior FMCSA medical examination. *Id*. ¶ 39. Following the examination, Dr. Elam called Ms. Dube and pressured her to retract the opinions stated in her letter regarding the plaintiff's ability to drive safely. *Id*. ¶¶ 41-42.

Dr. Elam subsequently told the defendant that the plaintiff was not qualified to perform the job of driver because of his ADHD. *Id*. ¶ 52. The plaintiff was then told by Matt Neal, an employee of the defendant, that the defendant was withdrawing its job offer because Dr. Elam refused to clear the plaintiff to drive because of his ADHD. *Id*. ¶ 53. The plaintiff underwent another medical examination on May 22, 2011, and presented the positive result to the defendant, requesting that it reemploy him as a driver. *Id*. ¶¶ 54-55. The defendant has not done so. *Id*. ¶ 55.

### III. Discussion

The defendant contends that this court lacks personal jurisdiction over it because it has no offices or facilities in Maine, does not direct recruitment efforts or advertisement to Maine or Maine residents, and does not have any systematic or continuous presence or contacts in Maine, and because the events that form the basis for the plaintiff's claims "occurred entirely within the State of Tennessee." Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") (ECF No. 7) at 1. It relies largely on the affidavit of Clarence Easterday, its executive vice-president. [Easterday] Affidavit (ECF No. 7-1).

Because this is a diversity case, Complaint ¶¶ 5-6, the court's authority to exercise personal jurisdiction over a non-resident defendant is limited by the State of Maine's long-arm statute. *See American Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989). As Maine's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the "fullest extent permitted by the due process clause of the United States Constitution, 14th Amendment," 14 M.R.S.A. § 704-A(1), the inquiry focuses on whether the assumption of jurisdiction would violate due process.

Due process requires that each defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Minimum contacts are determined by whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the defendant is subject either to "general" jurisdiction or "specific" jurisdiction. "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted). Absent general jurisdiction, this court may still assume jurisdiction if the claim "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id*.

> The Due Process Clause requires that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. For specific jurisdiction, the constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness.

*Phillips v. Prairie Eye Center*, 530 F.3d 22, 27 (1st Cir. 2008) (citations and internal punctuation omitted). Once the plaintiff demonstrates that the requisite minimum contacts exist such that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

Similarly, the Maine Law Court has determined that

> before exercising its jurisdiction over an out-of-state defendant, the court must conclude that (1) Maine has a legitimate interest in the subject matter of this action; (2) the defendant, by its conduct, should reasonably have anticipated litigation in Maine; and (3) exercise of jurisdiction by Maine's courts would comport with traditional notions of fair play and substantial justice.

*Frazier v. BankAmerica Int'l*, 593 A.2d 661, 662 (Me. 1991). Once the plaintiff demonstrates that Maine has a legitimate interest in the controversy and that the requisite minimum contacts

exist such that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

### A. Specific Jurisdiction

The defendant contends that this court lacks specific jurisdiction over it because the plaintiff's cause of action arises out of "hiring qualifications, procedures, and processes which occur entirely outside the State of Maine." Motion at 5. Its activities in Maine, it asserts, are the pick-up and delivery of freight, while the plaintiff's claims arise out of its decision not to hire him, a decision made in Tennessee based on a medical determination made in Tennessee. *Id*.

The plaintiff responds that his claims are related to the defendant's contacts with Maine, because they arise out of the defendant's contacts with him via telephone and e-mail. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") (ECF No. 10) at 10. Evidence of these contacts is found in Easterday's affidavit, as follows:

- The plaintiff filled out an application for employment as an over-the-road truck driver on the defendant's website in October 2010.
- The website is accessible in every state.
- The application was transmitted to the defendant's recruiting office outside the state of Maine.
- In response to the application, the defendant contacted the plaintiff by telephone from outside the state of Maine.
- As a condition of eligibility for employment, the plaintiff submitted to a physical examination, pursuant to Federal Motor Carrier Safety Administration regulations, in Nashville, Tennessee.

6

- The defendant is an interstate motor carrier of freight for hire, incorporated in Tennessee, with a principal place of business in Nashville, Tennessee.

- The defendant has no phone numbers, offices, terminals, yards, parking, training, or other facilities in the State of Maine.

- All dispatch of vehicles and drivers is conducted out of the defendant's terminals in Alabama, California, Iowa, Tennessee, or Iowa.

- None of the defendant's tractors or trailers is domiciled or titled in Maine.

- Miles driven by the defendant in the state of Maine are interstate and account for less than 2% of all miles driven.

- Since it began operating, less than .5% of all drivers hired by the defendant list Maine as their state of residence.

- No advertisement or recruitment efforts are specifically directed toward the state of Maine by the defendant.

- All driver applicants travel to the defendant's Tennessee or California terminals during the hiring process.

Easterday Affidavit ¶¶ 4-8, 17-24.[1]

Specific jurisdiction involves three inquiries: relatedness, purposeful availment, and reasonableness. *Henderson v. Laser Spine Inst. LLC*, 815 F.Supp.2d 353, 368 (D. Me. 2011); *see also BlueTarp Fin., Inc. v. Matrix Constr. Co.*, __ F.3d __, 2013 WL 765123, at *4-*5 (Mar. 1, 2013). Not surprisingly, the parties define relatedness differently. Based on the case law and the requirement that this court "accept[] any proffered facts construing them in the light most

---

[1] Treating the plaintiff's conclusory assertion that the Easterday affidavit "is inadmissible hearsay and so should be disregarded[,]" Opposition at 6 n.3, as a motion to strike the affidavit, the motion is denied. *See, e.g., Boit*, 967 F.2d at 675.

favorable to the party asserting the claim," *Jones v. Fairbank Reconstruction Corp.*, No. 2:11-cv-437-GZS, 2012 WL 3990089, at *2 (D. Me. Sept. 11, 2012), the plaintiff has the better argument.

"The relatedness inquiry asks whether the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities." *Henderson*, 815 F.Supp.2d at 368 (citation and internal quotation marks omitted). The plaintiff's claim arises directly out of the defendant's website, as it was available in Maine, and the defendant's telephone call to the plaintiff in Maine, offering him the position at issue. The transmission of information into Maine by way of telephone "is unquestionably a contact for purposes of [the jurisdiction] analysis." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389-90 (1st Cir. 1995). A nationwide, interactive website, standing alone, is not enough to create personal jurisdiction. *Henderson*, 815 F.Supp.2d at 375-76. However, when business related to the plaintiff's claim is conducted through that website, as was the case here, jurisdiction is proper. *Id*. Here, it is the business that was conducted, in part, through the website that gives rise to the plaintiff's claims.

To satisfy the purposeful availment inquiry, the defendant's in-state contacts "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Id*. at 370 (citation omitted). The elements of purposeful availment are voluntariness and foreseeability. *Id*.

> Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant *himself*. The contacts must be deliberate, and not based on the unilateral actions of another party.

*Id*. at 371 (emphasis in original; citation omitted). In this case, at the relevant time, the defendant was hauling 40 to 110 truckloads of water from Poland Spring in Maine every day.

Affidavit of Peter Cole (ECF No. 10-6) ¶ 8.  The defendant also hauled to and from Wal-Mart's distribution center in Lewiston, Maine; Hannaford's distribution center in South Portland, Maine; several Home Depot stores in Maine; the New Page paper mill in Rumford, Maine; and the Sappi Fine Paper mill in Skowhegan, Maine.  *Id*. ¶ 9.

This evidence, in addition to the defendant's contacts with the plaintiff in Maine, is sufficient to establish voluntariness.

The foreseeability aspect of purposeful availment "requires that the contacts with the forum state be of a nature that the defendant could reasonably anticipate being haled into court there."  *Henderson*, 815 F.Supp.2d at 371 (citation omitted).  The inquiry "also explores whether the defendant benefited from the forum-based contacts in a way that made jurisdiction foreseeable."  *Id*. (citation and internal quotation marks omitted).  The evidence of the defendant's conduct of business in Maine also fulfills these requirements.[2]

Finally, specific personal jurisdiction may be exercised only "if it comports with traditional notions of fair play and substantial justice." *Id*. at 377.  This requires an assessment of reasonableness.  *Id*.  This involves consideration of the defendant's burden of appearing, Maine's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most effective resolution of the controversy, and the common interests of all sovereigns in promoting substantive social policies.  *Id.* at 378.  In this case the defendant had not presented "a compelling case that the presence of some other considerations would render jurisdiction unreasonable," *id*. (citation omitted); rather, it merely asserts that it is unreasonable to subject it to the jurisdiction of this court because it has no

---

[2] This finding applies only to the issue of foreseeability in connection with the doctrine of specific personal jurisdiction.  The defendant's citation of *Lucerne Farms v. Baling Techs., Inc.*, 226 F.Supp.2d 255 (D. Me. 2002), Motion at 7, under the heading "Purposeful Direction," is proffered only on the issue of general personal jurisdiction.

9

contacts with Maine "which can be found to be purposely directed to" Maine. Motion at 7. I have already rejected the assertion that is the basis of this argument. In the absence of any other mention of this requirement by the defendant, this court's exercise of jurisdiction over this case cannot be deemed to be unreasonable.

### B. General Jurisdiction

It is not necessary to discuss the alternative basis for exercise of this court's jurisdiction over the defendant and the "considerably more stringent standard" for finding general personal jurisdiction, *Negrón-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007) (citation omitted), because I have concluded that specific personal jurisdiction over the defendant exists for the purpose of the plaintiff's claims. *See, e.g., Cambridge Literary Props., Ltd. V. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 295 F.3d 59, 67 (1st Cir. 2002).

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of March, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge